**LaVALLEE NORTHSIDE CIVIC ASSO-CIATION and LaVallee Village Development Assoc., Inc., Appellants in No. 88–3247**

v.

**VIRGIN ISLANDS COASTAL ZONE MANAGEMENT COMMISSION, Appellee in No. 88–3247.**

**LaVALLEE NORTHSIDE CIVIC ASSO-CIATION, and LaVallee Village Development Association, Inc., Appellants in No. 88–3593**

v.

**VIRGIN ISLANDS BOARD OF LAND USE APPEALS, Appellee in No. 88–3593.**

Nos. 88–3247, 88–3593.

United States Court of Appeals, Third Circuit.

Argued Dec. 8, 1988.

Decided Jan. 27, 1989.

Bruce Z. Marshack,. (Argued), Law Offices of Britain H. Bryant and Associates, P.C., Christiansted, St. Croix, U.S.A. V.I., for appellant LaVallee Northside Civic Ass'n.

Richard Austin, (Argued), Legal Services of the Virgin Islands, Inc., Christiansted, St. Croix, U.S.A. V.I., for LaVallee Village Development Ass'n, Inc.

Winston A. Hodge, (Argued), Law Offices of Winston A. Hodge, P.C., Chris-

tiansted, St. Croix, U.S.A. V.I., for Reflection Bay Joint Venture.

Richard O. Baker, (Argued), Asst. Atty. Gen., Godfrey R. de Castro, Atty. Gen., Rosalie Simmonds Ballentine, Sol. Gen., Susan Frederick Rhodes, Asst. ·Atty. Gen., Dept. of Justice, Charlotte Amalie, St. Thomas, U.S.A. V.I., Ronald W. Belfon, Virgin Islands Coastal Zone Management Com'n., Charlotte Amalie, St. Thomas, U.S.A. V.I., for appellees.

Before GREENBERG, SCIRICA and WEIS, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

In these consolidated appeals we decide that the district court properly required residents opposing the issuance of a Virgin Islands Coastal Zone Management Act permit to exhaust administrative remedies before petitioning for judicial relief. Consequently, in that first case we will affirm the order of the district court. However, we will reverse the ruling that the plaintiffs' filing of their timely district court complaint did not toll the statutory period for perfecting an administrative appeal. We also conclude that the permit issuance is the event that marks the beginning of the time allowed for taking an administrative appeal. Accordingly, we will vacate the order of the district court in the second appeal.

Plaintiffs are local residents and a nonprofit corporation who share a common interest in preserving the living conditions in their communities. When the Antilles Investment Corporation, now Reflection Bay Joint Venture,[1] proposed to construct a 121–unit condominium complex in their neighborhoods on St. Croix, Virgin Islands, plaintiffs opposed the issuance of the required permit by the Virgin Islands Coastal Zone Management Commission.

The Commission held a public hearing on Reflection Bay's application in August 1987. A number of plaintiffs and their representatives attended the hearing and some testified. All signed an attendance list. Although the governing statute requires that the Commission act within thirty days of the public hearing or the application be deemed approved, V.I.Code tit. 12, § 910(d)(4), the applicant, Reflection Bay, agreed to waive that limit. *See* V.I. R. & Regs. tit. 12, § 910–7(d).

The Commission met with Reflection Bay principals at a September 17, 1987 executive session and, in a letter dated September 29, 1987, wrote that the application had been approved with some restrictions, among which was a reduction in the number of condominium units from 121 to 100. By a letter dated October 9, 1987, Reflection Bay pressed for a reconsideration of those conditions. To evaluate this request, the Commission convened an additional meeting on November 5, 1987, but gave no notice to plaintiffs or the general public. In a letter to Reflection Bay dated November 20, 1987, the Commission approved the requested 121 units and modified some of the other conditions previously imposed. Plaintiffs did not receive a copy of this letter.

The permit was signed and issued by the Commission on December 21, 1987. On January 12, 1988, plaintiffs filed suit in the district court seeking injunctive and declaratory relief. They alleged that the Commission had abridged their rights to due process by failing to notify them of its actions on the permit application. The complaint was later amended to assert violations of the governing Virgin Islands Coastal Zone Management Act, V.I.Code Ann. tit. 12, §§ 901–914, and asking the court to direct the Commission to revoke the permit "pending an appeal of its decision in the appropriate forum." Reflection Bay's request to intervene was granted.

In dismissing the action for lack of subject matter jurisdiction, the district court cited the judicial review provisions in the Coastal Zone Management Act, particularly

---

**1.** The application was made by and the permit issued to Antilles Investment Corporation. The parties have used the name of Antilles' succes-

sor, Reflection Bay, as the real party in interest and we follow that practice in this opinion.

sections 913 and 914. Section 913 provides that the district court may grant declaratory or injunctive relief to restrain violations of the Act or to compel the performance of duties specifically imposed by the Act. *Id.* § 913(b)(1)–(2). Section 913(d) authorizes the filing of a petition for a writ of review of the grant or denial of a permit, after exhaustion of administrative remedies. *Id.* § 913(d). Section 914 permits an administrative appeal from the Commission's rulings to the Virgin Islands Board of Land Use Appeals. *Id.* § 914.

Reading sections 913 and 914 together persuaded the district court that plaintiffs were required first to exhaust their administrative appeal rights before seeking judicial relief. In the court's view, the exhaustion obligation extended also to the plaintiffs' claim that their action had been timely filed. The court noted, however, that "since the appeal time [before the Board] may have run ..., their inaction may be fatal." The district court filed its dismissal order on March 10, 1988, and plaintiffs promptly appealed to this Court.

On March 22, 1988, plaintiffs also asked the Board to review the Commission's permit decision. After a pretrial hearing, the Board dismissed the plaintiffs' administrative appeal as untimely because it had been taken beyond the forty-five day period set in the statute. The Board rejected the plaintiffs' contention that the appeal time had been tolled by the filing of the action in the district court.

Once again, plaintiffs turned to the district court, this time seeking a petition for writ of review of the Board's dismissal. Once again, they were unsuccessful. In recalling his March 10, 1988 memorandum, the district judge wrote: "we recognized that our federal question jurisdiction was implicated by LaVallee's procedural and substantive due process contentions as well as the equal protection claim. Nevertheless, we preferred that the LaVallee interests first seek redress from the Board, reasoning that upon our review of the Board's decision it might be unnecessary to reach the federal issues."

On the timeliness issue, the court concluded that the forty-five day appeal period began to run on September 17, 1987—the date on which the Commission voted to grant the application. Construing the time limitations as jurisdictional, rather than in the nature of a statute of limitations, the court decided that it could not apply equitable tolling. After dismissing the due process claims, the court denied the petition for writ of review.

## I.

The Federal Coastal Zone Management Act of 1972, as amended, 16 U.S.C. §§ 1451–1464, established a national program for development of coastal areas in the United States. As part of the statutory plan, states are encouraged to enact laws designed to preserve, protect, develop, and, where possible, restore and enhance the resources of the United States' coastal zone. *See* 16 U.S.C. § 1452(1); *Cape May Greene, Inc. v. Warren,* 698 F.2d 179, 187 (3d Cir.1983).

The Virgin Islands legislature enacted such a statute in 1978 to control development activities on the islands of St. Thomas, St. Croix, St. John, the offshore islands and cays, and the territorial sea. V.I.Code Ann. tit. 12, § 902. The Act declared that the natural and scenic resources of the coastal zone, "held in trust by the Government of the Virgin Islands for the benefit of the people," was of "vital concern to present and future residents of the Virgin Islands." *Id.* § 903(a)(2)–(3). Among its express goals, the Act was adopted to assure the "orderly, balanced utilization and conservation of the resources of the coastal zone, taking into account the social and economic needs of the residents of the Virgin Islands." *Id.* § 903(b)(4). *See West Indian Co. v. Government of the Virgin Islands,* 844 F.2d 1007, 1011 (3d Cir.), *cert. denied,* — U.S. —, 109 S.Ct. 31, 102 L.Ed.2d 11 (1988).

The statute vested in the Coastal Zone Management Commission the primary authority for the Act's implementation through a permit issuing process. V.I. Code Ann. tit. 12, § 904. It also imposed a

check on this process through a system of administrative and judicial review. The contours of these administrative and judicial procedures are set out in section 913 of the Act, providing in pertinent part:

"(a) *General.* The provisions of this section shall be cumulative and not exclusive and shall be in addition to any other remedies available at law or equity.

(b) *Enforcement.* (1) Any person may maintain an action for declaratory and equitable relief to restrain any violation of this chapter....

(d) *Judicial Review—Writ of Review....* a petition for writ of review may be filed in the District Court of the Virgin Islands in the case of any person aggrieved by the granting or denial of an application for a coastal zone permit ... provided that such administrative remedies as are provided by this chapter have been exhausted."

*Id.* § 913.

Section 914 describes the administrative appeal process: "Notwithstanding any provision of law to the contrary, any aggrieved person may file an appeal of an action by the Commission ... with the Board of Land Use Appeals...." *Id.* § 914(a).

With these provisions of the Coastal Zone Management Act in mind, we turn to the plaintiffs' contentions of error.

## II.

■ Soon after the district court complaint was filed, Reflection Bay moved to dismiss, citing the plaintiffs' failure to appeal to the Board. Plaintiffs responded that the legislature intended to grant an election of remedies by reciting in section 913(a) that the provisions "shall cumulative and not exclusive." *Id.* § 913(a). The district court rejected the plaintiffs' construction because it would circumvent the exhaustion requirement in section 913(d), thus nullifying that provision in practice. As the judge explained, such an interpretation "would displace the Board's function as an expert appellate panel in this area, and would unduly clog this Court with premature challenges of essentially administrative rulings."

The district court's reasoning is in keeping with the general judicial disinclination to interfere with the administrative process until it has been completed. As the Supreme Court explained in *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51, 58 S.Ct. 459, 463, 82 L.Ed. 638 (1938), the "long settled rule of judicial administration [is] that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy had been exhausted."

The exhaustion rule rests on the premise that it is more efficient to allow the administrative process to go forward without interruption than to permit parties to involve the court at various intermediate intervals. Exhaustion grants the agency an opportunity to correct its own errors and ensures a full record for the courts by facilitating consideration in light of the agency's experience and expertise. *Bethlehem Steel Corp. v. EPA*, 669 F.2d 903, 907 (3d Cir. 1982); *Cerro Metal Prods. v. Marshall*, 620 F.2d 964, 970 (3d Cir.1980).

Judicial forbearance shows a proper respect for administrative autonomy, allowing the agency to function more efficiently and responsibly. *See Weinberger v. Salfi*, 422 U.S. 749, 765, 95 S.Ct. 2457, 2466, 45 L.Ed.2d 522 (1975); *McKart v. United States*, 395 U.S. 185, 193–94, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969). Yet perhaps the most compelling reason for favoring administrative exhaustion is the strong possibility that the dispute may become moot if the party ultimately prevails before the agency, thus obviating the occasion for judicial review. *See FTC v. Standard Oil Co.*, 449 U.S. 232, 243–45, 101 S.Ct. 488, 494–95, 66 L.Ed.2d 416 (1980).

Although the benefits to the judicial system from insistence on administrative exhaustion generally are substantial, there are occasions for pragmatic exceptions designed to promote efficiency. We have noted that the requirement is excused when the challenged agency action constitutes a clear and unambiguous violation of statutory or constitutional rights, when reliance on administrative procedures is

clearly and demonstrably inadequate to prevent irreparable injury, and when exhaustion is futile. *Susquehanna Valley Alliance v. Three Mile Island Nuclear Reactor,* 619 F.2d 231, 245 (3d Cir.1980), *cert. denied,* 449 U.S. 1096, 101 S.Ct. 893, 66 L.Ed.2d 824 (1981). We have also been careful to point out that, except when compelled by statute, exhaustion "is not an inexorable command, but is a matter of sound judicial discretion." *Cerro Metal Products,* 620 F.2d at 970.

In the case at hand, the district court reasoned that insisting on administrative exhaustion would give effect to all the provisions governing judicial review, but that the plaintiffs' election of remedies interpretation would negate or weaken the statutory scheme. We conclude that those considerations were properly taken into account here and provide firm support for the district court's interpretation of the statute. *See Pomper v. Thompson,* 836 F.2d 131, 133–34 (3d Cir.1987) (statutes should be construed to give effect to every phrase).

In addition, a recognized tenet of statutory interpretation directs that a specific provision in an enactment prevails over a seemingly irreconcilable general one. *See* 2A A. Sutherland, *Statutes and Statutory Construction* § 51.05, at 499 (N. Singer 4th ed. 1984). Thus, in *Creque v. Luis,* 803 F.2d 92, 95 (3d Cir.1986), we wrote that, once "it has been determined that two statutory provisions cannot be reconciled, ... the more specific will take precedence over the more general." *See Busic v. United States,* 446 U.S. 398, 406, 100 S.Ct. 1747, 1753, 64 L.Ed.2d 381 (1980); *Preiser v. Rodriguez,* 411 U.S. 475, 489–90, 93 S.Ct. 1827, 1836, 36 L.Ed.2d 439 (1973).

Consonant with that rule, the expansive access to judicial relief for violation of the Virgin Islands Act must be considered subject to administrative exhaustion in the specific instances where the grievance is based on the grant or denial of a permit. That is different from the situation where a person can begin an immediate action under section 913(b) to restrain a violation of the Act or to compel the performance of duties the Act specifically imposes. As an illustration, the Virgin Islands government properly sought direct judicial relief against a defendant alleged to be conducting quarrying operations in the coastal zone without first obtaining a permit. *Government of the Virgin Islands v. Virgin Islands Paving, Inc.,* 714 F.2d 283 (3d Cir.1983). Unlike the general language of the provision applicable in that case, section 913(d) here specifies relief for "any person aggrieved by the granting or denial of an application for a coastal zone permit."

Further indications that the district judge's construction accurately reflects the legislature's intent are found elsewhere in the statute. Chapter 97 of the Virgin Islands Code—to which the first phrase of section 913(d) refers—provides that writs of review are allowed "in all cases where there is *no appeal* or other plain, speedy, and adequate remedy." V.I.Code Ann. tit. 5, § 1422 (emphasis added). The fact that the legislature thought it necessary to provide for writs of review in permit cases evidences an intent to supply a right to appeal for a class of disputes that might otherwise be unreviewable. Moreover, the sole responsibility of the Board appears to be the review of the Commission's permit application decisions. *See id.* tit. 12, § 914(d) ("Actions of the Board").

We find no error in the district judge's determination that the Act compels administrative exhaustion in this case and, in any event, we would approve the ruling as one within the sound discretion of the court. *See Muhammad v. Carlson,* 739 F.2d 122, 124 (3d Cir.1984) (even where legislature has not prescribed it, exhaustion is generally required). *See generally* 4 R. Anderson, *American Law of Zoning 3d* § 27.28 (1986) (exhaustion rule applied in zoning appeals). Accordingly, we will affirm the district court's decision requiring plaintiffs to first take their grievances to the Board.[2]

---

**2.** The district court order of March 10, 1988 did not pass on the plaintiffs' due process claim, concluding that administrative findings of fact and conclusions of law would aid in the resolution of that issue. Because the due process issue was left open, the district court should

### III.

Following their dismissal from district court, plaintiffs repaired to the Board which began its review by first examining the timeliness of the appeal, an issue that the district court's order of March 10, 1988 reserved for the agency. Under the statute, aggrieved parties are allotted forty-five days from the date "of an action by the Commission" in which to appeal to the Board. V.I.Code Ann. tit. 12, § 914(a).

The parties proposed various times as the commencement of this forty-five day clock. The Commission submitted September 17, 1987, the date on which the initial vote on the permit application was taken. Reflection Bay proposed any of three days: September 17; September 29, the date when the vote was reduced to writing; and November 20, the date of the Commission's letter to Reflection Bay advising that the requested reconsideration of conditions was granted. Plaintiffs urged December 21, 1988, the day on which they received the letter of reconsideration of special conditions.

The Board, however, declined to make any finding on this point, deciding instead that March 22, 1988—the date plaintiffs filed their appeal to the Board—was the controlling terminal point for the forty-five day period. Consequently, all of the beginning points suggested by the parties were outside the statutory appeals period. Because the Board believed it lacked authority to apply equitable tolling based on the date the complaint was filed, the appeal was dismissed as untimely.

Plaintiffs appealed to the district court which, in an August 12, 1988 memorandum opinion, affirmed the Board's decision. The court read the statute as permitting an appeal within forty-five days of "any action" of the Commission. Because it concluded that the vote of that entity at the September 17, 1987 meeting constituted the "appealable action," the court ruled that the plaintiffs' appeal was out of time.

The statutory time provisions for appeals to the Board are far from clear. Section 910(d)(5) states that any "action" by the Commission "shall become final after the forty-fifth day following a decision, unless an appeal is filed with the Board of Land Use Appeals within such time." V.I.Code Ann. tit. 12, § 910(d)(5). This provision appears to equate "action" with "decision." Further on in the statute, section 914(a) recites that an aggrieved person may file an appeal of "an action" by the Commission "within forty-five days thereof," and "such appeal shall be governed solely by the provisions of this section." Id. § 914(a). The statute nowhere defines the words "action" or "decision."

Section 914(b) directs the Board to adopt "rules and regulations governing the submission and review of applications for appeal." Id. § 914(b). Acting on this mandate, the Board promulgated regulations which the Governor approved.

Regulation § 902–2(b) defines "action" as "a vote by a quorum of Committee members or Commission members upon a motion, proposal, resolution or order, whether or not resulting in a collective decision by a majority of those voting members present." Regulation § 914–5(2)[3] provides that petitions for appeal are "timely if filed with the Chairman, or Administrative Officer of the Board within forty-five (45) calendar days after the decision-below has been rendered in written form, and has been served on the applicant." Id. § 914–5(a) (as amended July 5, 1984).

The district court decided that the term "action" referred to the Commission's "decision" at the September meeting to grant Reflection Bay's permit application. The court wrote that the more specific language of Regulation § 914–5(a) "conflicts

---

have remanded the case for administrative determination, rather than dismissing the complaint. In view of our disposition of these consolidated cases, however, this error is of no moment.

**3.** The regulations of section 914 were revised in 1984 but have not yet been published for inclusion in the Virgin Islands Rules and Regulations binder, the most recent update consisting of 1985 insert pages. Because the 1984 revisions are now effective, we apply the current rather than the published version of the regulations.

with the language of the statute and, thus, cannot be followed."

We agree that an administrative agency's regulation that conflicts with the parent statute is ineffective. *United States v. Vogel Fertilizer Co.*, 455 U.S. 16, 26, 102 S.Ct. 821, 828, 70 L.Ed.2d 792 (1982). Yet, our starting point is to attempt reconciliation of seemingly discordant statutes and regulations. Only where that outcome is not possible do we disregard the regulations. *Bencivenga v. Western Pennsylvania Teamsters & Employers Pension Fund*, 763 F.2d 574, 579 (3d Cir.1985). Our approach leads us to differ with the district court's conclusion that a conflict exists here.

As noted earlier, the statutory provisions governing administrative appeals are imprecise and confusing. Perhaps in recognition of this weak drafting, or with the thought that the agency could tailor more workable guidelines in light of practical experience, the legislature directed the Board to promulgate rules and regulations. The Board's efforts to comply with the mandate do in fact clarify and supplement certain aspects of the statute that are unquestionably vague.

Regulation § 914–1 states that the Board's rules are intended to "establish uniform and coordinated procedures for the administration of the Statute," and are to be interpreted in a manner "consistent with the policies and mandates of the statute and construed to secure the just, speedy, and inexpensive determination of every controversy and matter before the Board of Land Use Appeals." V.I. R. & Regs. tit. 12, § 914–1 (as amended July 5, 1984). Not surprisingly, this last clause is an almost exact quote of Federal Rule of Civil Procedure 1.

Apart from such broad interpretative guidance, the regulations incorporate traditional, federal sources of judicial procedure. One provision, captioned "Rule of Decision," dictates: "Where these rules fail to provide sufficient guidance to the Board, the Board shall be guided by the Federal Rules of Evidence on evidentiary matters, and by the Federal Rules of Appellate Procedure insofar as practicable and in conformity with the general principles of due process." V.I. R. & Regs. tit. 12, § 914–11 (as amended July 5, 1984).

The Regulation further provides that the Board "for good cause" may enlarge the time prescribed by the rules "or may permit an act to be done after the expiration of such time; but the Board may not enlarge the time for filing an appeal." *Id.* § 914–5(c) (as amended July 5, 1984).

Efficient judicial administration favors appealability of only final orders, with but few exceptions. *See* 28 U.S.C. § 1291. This principle recognizes that freely allowing interlocutory appeals on preliminary matters often leads to harassment and unnecessary delay. *See Van Cauwenberghe v. Biard*, —— U.S. ——, 108 S.Ct. 1945, 1949 & n. 3, 100 L.Ed.2d 517 (1988); *Budinich v. Becton Dickinson & Co.*, —— U.S. ——, 108 S.Ct. 1717, 1720–21, 100 L.Ed.2d 178 (1988); *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, —— U.S. ——, 108 S.Ct. 1133, 1136 & n. 7, 99 L.Ed.2d 296 (1988).

Courts generally will entertain appeals from only those decisions that conclusively end the litigation, that leave nothing for the lower court to do but the ministerial task of entering the judgment. *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945). This canon, and the evils it was fashioned to inhibit, offers us a useful analogy in deciding when the Virgin Islands statute intended the forty-five day appeals period to commence.

Like the statute, the Board's regulations also seem to treat the terms "decision" and "action" as interchangeable. *See* V.I.R. & Regs. tit. 12, § 914–3 (as amended July 5, 1984) (Board may review "any decision or action below"). The regulations define "appeal" as a challenge before the Board to "the decision-below." *Id.* § 914–2(f). Decision-below, in turn, is defined as "any decision of an authority-below which is final and conclusive upon an applicant." *Id.* § 914–2(g).

The Commission vote of September 17, 1987 to issue a permit was not a final

action. The application process continued after that date through a motion for reconsideration, a later Commission inquiry and re-evaluation, and ultimately in changes to the original approval. Nor were the alterations inconsequential—the increase in the number of units from 100 to 121 was substantial. The vote on September 18 was not the ultimate action of the Commission, and hence, was not a decision final for purposes of review.

Also not conclusive was the Commission's November 20 letter detailing the substantial modifications to the earlier approval. The letter instructed Reflection Bay to submit three copies of the revised site plan "for final approval to be included as an exhibit in the Permit." Presumably, if the modified site plan did not meet with the Commission's approval, the permit would not have been issued. Furthermore, the letter apparently was not delivered for some time—possibly even within forty-five days of the date the district court complaint was filed.

In our view, the Commission did not issue a final decision until the permit was executed on December 21, 1987. A permit is a grant of authority or a license to do a certain thing. *See In re Building Permit & Zoning*, 29 N.C.App. 749, 225 S.E.2d 647, 649, *disc. rev. denied*, 290 N.C. 661, 228 S.E.2d 451 (1976). According to the Commission's regulations, "[d]evelopment for which a major Coastal Zone Permit has been approved shall not begin until the Committee has signed and issued the Coastal Zone Permit to the applicant." V.I.R. & Regs. tit. 12, § 910–11(a). *See* V.I.Code Ann. tit. 12, § 910(a)(1).

Neither the Commission's initial vote of approval nor its later reconsideration of the permit conditions was the conclusive legal event. Further formal action by the Commission was both contemplated and required before the favorable vote was to be considered effective.

Until the permit issued on December 21, the Commission's activity was tentative and subject to alterations—a contingency which in fact occurred. To adopt a loose definition of "action" or "decision" that would allow any preliminary vote on an application to be appealable would increase delay, impede the administrative process, and risk an unexpected invocation of *res judicata*.

Plaintiffs here, for example, might have been willing to accept a development of 100 condominiums, and hence, not appeal the September 17 vote. However, when the project was increased to 121 units, as the November 20 letter authorized, the plaintiffs' earlier acquiescence might very well have turned to vigorous opposition. Yet if September 18 were adopted as the time limitation's beginning point, as defendants argue, plaintiffs would have lost the right to appeal—even before the November 20 modification had been made by the Commission.

Procedural rules are not intended to create technical traps for parties, forcing them into filing premature, precautionary appeals to head off some slight doubt as to the propriety of the decisionmaking. *See Blanchard v. Commonwealth Oil Co.*, 294 F.2d 834, 837 (5th Cir.1961). Failing to heed the purposes of the finality concept in the circumstances here would frustrate the statute's aim of encouraging public participation. *See* V.I.Code Ann. tit. 12, § 903(b)(11).

Our determination to treat the permit issuance as the final decision appealable to the Board is supported by authority in zoning board appeals from a number of states. *See, e.g., Trenkamp v. Burlington Township*, 170 N.J.Super. 251, 406 A.2d 218, 222–23 (Law Div.1979); *Gilbert v. Zoning Hearing Bd.*, 34 Pa.Commw. 299, 383 A.2d 556, 558 (1978); *Hardy v. Zoning Bd. of Review*, 113 R.I. 375, 321 A.2d 289, 291 (1974); *MacGregor v. Zoning Bd. of Review*, 94 R.I. 362, 180 A.2d 811, 814 (1962); *Nolfi v. Zoning Bd. of Review*, 91 R.I. 444, 164 A.2d 695, 696 (1960). *But cf. Nantucket Land Council, Inc. v. Planning Bd.*, 5 Mass.App. 206, 361 N.E.2d 937, 943 (1977).

If the lengthy appellate proceedings in the cases before us demonstrate nothing else, it is the urgency for a clarification of the Coastal Zone Management Act by the Virgin Islands legislature. We join the dis-

trict court in recommending appropriate modifications to the Act so that neither individual litigants nor government agencies are left to flounder in the sea of uncertainties generated by the statute's imprecision.[4]

### IV.

By starting the forty-five day period on December 21, 1987, the filing of the district court suit on January 12, 1988 falls within the prescribed period. This factual premise undermines the reasoning that led the Board and the district court to reject the invocation of equitable tolling to the administrative appeal.

■ Equitable tolling—a form of estoppel suspending the running of a time period —is applied most frequently where the statute of limitations is invoked as a defense. In circumstances where the defendant's conduct of concealment or misleading has placed the plaintiff at a disadvantage, the courts have refused to countenance the statute of limitations defense. *See Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 (3d Cir.1983), *cert. dismissed*, 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984). Having unfairly lulled the plaintiff into inaction, the defendant may not profit by his wrongful conduct.

If, however, the time limitation is jurisdictional in nature, thus going to the very power to adjudicate, the court must consider the delay *sua sponte* and apply the statute strictly. In *Pomper v. Thompson*, 836 F.2d 131 (3d Cir.1987), we determined that the district court lacked authority to hear an appeal from an administrative agency filed two weeks after the statutory fifteen-day appeal period had expired. We reached our conclusion reluctantly, noting that the untimeliness had been caused by the agency's own error in misinforming the petitioners that they had thirty days in which to appeal. Nevertheless, we concluded that the time specified in the statute was mandatory and jurisdictional, and could not be tolled. *Id.* at 133. *See Torockio v. Chamberlain Mfg. Co.*, 456 F.2d 1084, 1085 (3d Cir.1972) (in banc).

Because they are forums of limited jurisdiction, federal courts are rightly cautious in observing the limits of their authority. Hence, where a statute sets the time within which an appeal may be taken to federal court, expiration of that period has been held to deprive the court of its power of adjudication. In that sense, the statutory appeal time has been said to be jurisdictional. *See Browder v. Director, Dep't of Corrections*, 434 U.S. 257, 264, 98 S.Ct. 556, 560, 54 L.Ed.2d 521 (1978). *But see Bowen v. City of New York*, 476 U.S. 467, 478, 106 S.Ct. 2022, 2029, 90 L.Ed.2d 462 (1986) (sixty-day period for appeal of Social Security cases is statute of limitations and not jurisdictional); *Weinberger v. Salfi*, 422 U.S. 749, 763, 95 S.Ct. 2457, 2465, 45 L.Ed.2d 522 (1975) (same); Carrington, *Toward a Federal Civil Interlocutory Appeals Act*, 47 Law & Contemp.Probs. 165, 170 (Summer 1984) ("The present law treats ripeness and timeliness as jurisdictional in the sense that they are objections that cannot be waived and must be raised by the court sua sponte. This is a fetish which serves no significant systemic interest...."). *See also* Hall, *The Jurisdictional Nature of the Time to Appeal*, 21 Ga.L.Rev. 399 (1986) ("The federal courts have fundamentally misconceived the nature of limitations on the time to appeal.").

That same jurisdictional concern is not present when the appeal is taken from one level of an administrative agency to another. Frequently, inter-agency review is more flexible and less formal than judicial appeals, and in the absence of statutory directives, there is a tendency to construe the time limitations more liberally.

**4.** The courts are not alone in their criticism of the Act's appeals provisions. A November 1987 Final Evaluation Findings Report observed that the appeals "timeframes often do not coincide due to the time required to prepare the decision and any special conditions." The Report concluded: "These regulatory inconsistencies do not provide for a clear appeals process." Office of Ocean & Coastal Resource Management, *Final Evaluation Findings for the Virgin Islands Coastal Zone Management Program for the Period from September 1985 through March 1987* at 6 (Nov. 13, 1987) (appended to plaintiffs' supplementary memorandum, dist. ct. docket # 28).

In the case before us, the statute itself does not direct strict compliance with the time set for an appeal from the Commission to the Board. The regulations, however, specify that "the Board may not enlarge the time for filing an appeal." V.I. R. & Regs. tit. 12, § 914–5(c). We need not now determine whether this regulation forecloses consideration of an untimely appeal, because as noted above, the appeal here was filed timely, though not with the administrative board.

In *School Dist. of Allentown v. Marshall,* 657 F.2d 16 (3d Cir.1981), we discussed a variation on the tolling concept that hinges not on the misconduct of the defendant, but rather on the plaintiff's mistake in filing in the wrong forum. There, we noted the accepted application of equitable tolling to cases where the plaintiff raised the precise statutory claim in issue, but did so in the wrong court. *Id.* at 20. *See Burnett v. New York Cent. R.R.,* 380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965) (by filing within statutory time period, petitioner exercised proper diligence to merit tolling of statute).

It is true that this line of cases generally involves statutes of limitation, provisions which ordinarily are not considered to be jurisdictional. *See e.g., Bowen,* 476 U.S. 467, 106 S.Ct. 2022, 90 L.Ed.2d 462; *Honda v. Clark,* 386 U.S. 484, 87 S.Ct. 1188, 18 L.Ed.2d 244 (1967); *Smith v. American President Lines,* 571 F.2d 102 (2d Cir. 1978). *See also Chinnery v. Government of the Virgin Islands,* 865 F.2d 68, 71 n. 4 (3d Cir.1989); *Moore v. Graybeal,* 843 F.2d 706, 711 n. 5 (3d Cir.1988).

However, the Court of Appeals for the Eleventh Circuit applied a form of equitable tolling to a case in which the time set in the statute may be construed as jurisdictional in nature. In *Boggs v. United States R.R. Retirement Bd.,* 725 F.2d 620 (11th Cir.1984), a disability claimant timely, but mistakenly, filed a petition for review in the district court, rather than in the Court of Appeals, as the statute required. Federal Rule of Appellate Procedure 15, which governs review of adminis-

trative agency decisions, makes no provision for legitimating petitions filed in the wrong court. Also inapplicable was Federal Rule of Appellate Procedure 4(a), which permits tolling if a notice of appeal from a trial court judgment is erroneously filed in the Court of Appeals. Nevertheless, the Court entertained the appeal by using "the principle of Rule 4(a) by analogy" to find a timely filing. *Id.* at 621–22.

The *Boggs* analogy is persuasive here. The Board's regulations expressly encourage reference to the Federal Rules of Appellate Procedure "insofar as practicable and in conformity with the general principles of due process." V.I.R. & Regs. tit. 12, § 914–11. Like the situation in *Boggs,* the Board's regulation here is not inconsistent with the statute and furnishes a reasonable method for accommodating the rights of plaintiffs who had acted in a timely manner, but because of their colorable construction of the Act, filed an appeal in the wrong forum. A party who brings an appeal within the prescribed statutory time, but unknowingly does so in the wrong forum, has nonetheless "appealed" within the appropriate limitation period in the sense that notice has been given to the adverse party. *See Pasternack v. Commissioner,* 478 F.2d 588, 593 (D.C.Cir.1973) (per curiam) (papers inaptly worded or filed in wrong court still sufficient to show party's intent to appeal).

The statutory provision implicated here—which presumes to give "cumulative and not exclusive" jurisdiction to the Board and the district court—is a factor that influences the decision to allow tolling. Plaintiffs, after all, had some reason to believe that suit in the district court was a proper alternative. Although we agree that the correct procedure is to first exhaust administrative remedies, there is some substance to the plaintiffs' argument that the district court had concurrent jurisdiction under this poorly worded statute.

The case for tolling is even more compelling here than in *Boggs.* Having filed within the statutory forty-five day appeals period, the plaintiffs are entitled to invoke equitable tolling. We hold that the appeal to

the Board is valid and the dismissal was erroneous.

Generally, when an administrative agency declines to exercise its discretion because of an erroneous view of the law, a court will remand for reconsideration under the correct legal standard. Here, however, the equities and a pragmatic view of the situation leave no question as to the proper ruling. Moreover, there is a strong public interest in resolving these appeals promptly so that the disputed project may either move forward or be abandoned, allowing other possible uses of the land to be considered. *See* 4 R. Anderson, *supra*, § 27.24, at 532.

We conclude, therefore, that the Board should, at this juncture, consider the merits of the plaintiffs' appeal. We will vacate the district court's order of dismissal and remand with instructions to remand the matter to the Board for resolution of the plaintiffs' claim on the merits.